**E. J. ANDERSON, Plaintiff,**

v.

**The TOWN OF FOREST PARK, OKLA-HOMA, a Municipal Corporation, Lewie Lacy, President of the Board of Trustees, Ray Lindsey, Arthur Ramsey, and Elmer Wahl, Members of the Board of Trustees, and Raymond E. Poe, Town Clerk of the Town of Forest Park, Defendants,**

**E. L. Davis and Juanita Davis, Intervenors.**

**Civ. No. 64-89.**

United States District Court
W. D. Oklahoma.

March 24, 1965.

Arnold B. Britton, and James E. Grigsby, Oklahoma City, Okl., for plaintiff and intervenors.

Edward M. Box, Leroy Powers, and William R. Davis, Oklahoma City, Okl., for defendants.

BOHANON, District Judge.

The plaintiff alleges generally that he is a Negro citizen and resident of Oklahoma, that the defendant Town of Forest Park is a corporation under the laws of Oklahoma, and that the individual defendants are the Trustees and Officers thereof. This action is brought against the defendants under Title 42 U.S.C.A. § 1983 (Civil Rights Act), with jurisdiction authorized under Title 28 U.S.C.A. § 1343, and injunctive relief provided for in Title 28 U.S.C.A. § 2201.

The plaintiff alleges that he has purchased by written contract from M. N. Brown certain residential real estate in South Forest Park in order to build his family home; that he filed his application for the construction of said home upon the purchased land and complied with Ordinance No. 4 of the Town of Forest Park.

It is claimed by the plaintiff that on the 12th day of September, 1963, the plaintiff was notified by the Town Clerk of Forest Park that the application for a permit was denied for the following reasons:

1. The plans do not contain the requirements of Ordinance No. 28 relating to septic tanks, distributor boxes and laterals. Neither do said plans comply with the minimum requirements for septic tanks and sanitary systems as compiled by the Oklahoma State Department of Health, Department of Sanitary Engineering.

2. The plans do not show or indicate intended compliance with Ordinance No. 23 providing for the drilling of wells or the placement thereof and the depth requirements thereof.

3. Your application is not accompanied by a proper application for a drill-

ing permit to drill a well in accordance with the provisions of Ordinance No. 23.

4. Your plans do not show compliance with the terms and provisions of Ordinance No. 29 relating to the surfacing of streets and the requirements and specification thereof.

The plaintiff contends that under color of Ordinances No. 23, No. 28, and No. 29 (enacted in 1961 and 1962), the defendants intend to create a "buffer zone" of South Forest Park to prevent Negroes from encroaching upon the white residents of the North portion of the Town of Forest Park; that the use of such ordinances under the guise of the police power of the Town deprives the plaintiff of his rights under the Constitution of the United States, such rights as are enjoyed by the white residents upon whom said ordinances are not imposed in South Forest Park and the North portion of Forest Park.

The plaintiff asks that the Court declare Ordinances No. 23, No. 28, and No. 29 void and unenforceable, that the defendants and their successors be permanently enjoined from enforcing said ordinances, and the doing of any acts which will prevent the plaintiff from constructing his home.

The Complaint of the intervenors, who are also Negroes, is substantially the same as that of the plaintiff.

The defendant answers that it is a municipal corporation under the laws of the State of Oklahoma; that the Court is wholly without jurisdiction to render judgment against the defendants; that the plaintiff is not the owner, either legal or equitable, of the land described in the Complaint, and is without sufficient interest to invoke the jurisdiction of the Court; that the fee simple title to the land is in M. N. Brown and Orlie Dills Brown; that there is now an action pending in the District Court of Oklahoma County asking for the same relief as sought in this action.

The Court finds that the Town of Forest Park was incorporated in 1955, and originally was composed of 160 acres (NW/4 Sec., T. 12N., R. 2W., Oklahoma County) immediately north of South Forest Park (being generally NE/4 of SW/4 Sec., T. 12 N., R. 2W., Oklahoma County, with minor variations). The area known as South Forest Park was platted and annexed and made a part of Forest Park proper, sometimes known as North Forest Park. Prior to 1955 North Forest Park was known as Forest Park Addition and was substantially, if not fully, developed as a dwelling area. South Forest Park, which had only four houses, is still only partially settled, there being just sixteen dwelling houses in the area.

The evidence is clear that the area generally south of South Forest Park, including Northeast 23 Street, of Oklahoma City, and in the area, is populated by Negroes, and that the area west of South Forest Park is populated with Negroes. The Town of Forest Park has no municipal water system, no municipal sewer department, no fire department, and has an annual revenue of approximately $5,000. It has one policeman, but no other employees except the Town Clerk. Each residence built in North and South Forest Park obtains water from water wells drilled in the ground upon which they are situated, from depths of 100 to 270 feet. There is one well in North Forest Park drilled to a depth of 400 feet. A number of residents in North and South Forest Park have swimming pools in their backyards, the water for which is supplied by the water wells on the respective properties. Some of the streets in North and South Forest Park have been hard surfaced by the employees of the Board of County Commissioners of Oklahoma County, and the cost of material paid for by voluntary contributions made by property owners whose property is benefited. The streets are maintained by employees of the

Board of County Commissioners of Oklahoma County without cost to the property owners. The streets in South Forest Park were covered with 4 inches of gravel at the time the area was platted, in 1955. The sewage from the residents of both North and South Forest Park is disposed of through septic tanks, distribution boxes, and laterals, constructed on each property by the owner thereof, each of which septic tank systems were built in accordance with the rules of the Department of Health of the State of Oklahoma. None of the laterals heretofore constructed on properties of the individual residents of either North or South Forest Park exceeded 750 feet. No health problem has developed in the Town of Forest Park from the septic tank system. The proof shows that some residents in North Forest Park have had some trouble in the summer season periodically in obtaining sufficient water supply from their respective wells.

The proof is clear that M. N. Brown and Orlie Brown, owners and developers of South Forest Park, have offered lots for sale in its addition since 1955 and have sold only to white people. In 1959 a Negro built a residence on Bryant Avenue, immediately west of South Forest Park, and no further sales of lots in South Forest Park have been made to white people. In August 1961, the Browns sold a lot in South Forest Park to Dr. James A. Cox, a Negro physician, and later sold him an adjoining lot. In May 1963, Dr. Cox made application to the Town of Forest Park for a permit to build a residence upon the two lots he had purchased in South Forest Park, and submitted plans and specifications for the house, costing between $40,000 and $54,000. On May 7, 1963, the Town Clerk denied the application on the grounds that Ordinances No. 4, No. 23, No. 28, No. 29 and No. 30 had not been complied with, and on the further ground that the Town was considering the condemnation of a portion of said lot for the opening of a street. Notwithstanding the denial, Dr. Cox, through his

contractor, G. M. Dodson, commenced the building upon said lots, and the Town filed an action for an injunction against him in the District Court of Oklahoma County, enjoining and restraining the building of the Dr. Cox residence. By agreement of the parties, the injunction became permanent. The validity of said ordinances or the question of discrimination in the enforcement thereof was not considered or decided in that case, and it is not res judicata to this action.

In 1962, M. N. Brown made application to the Board of Trustees of the Town of Forest Park for a permit to build a residence on a lot be owned in South Forest Park. He submitted plans and specifications, and said application was denied by the Town Clerk, and on appeal to the Board of Trustees, it was also denied, on the ground that the application did not conform to Ordinances No. 24 and No. 28.

In 1962 M. N. Brown and Orlie Brown brought an action in the District Court of Oklahoma County against the Town of Forest Park, seeking an injunction against the Town from enforcing Ordinances No. 23, 24, 28 and 29, on the grounds that they are unconstitutional, void, and arbitrary, and amount to the taking of plaintiff's property without just compensation. This action is now pending and does not raise the question of denial of civil rights of the plaintiff and intervenors in this case.

The Court finds that the plaintiff, E. J. Anderson, and the Intervenors, E. L. Davis and Juanita Davis, have a valid, enforceable, written contract purchasing real property from M. N. Brown and Orlie Brown, the owners of substantially all of the remaining undeveloped lots in South Forest Park.

The question here is one of whether Ordinances Nos. 23, 28 and 29 are discriminatory, arbitrary, and enacted for the purpose of preventing Negroes from owning, building, and living in South Forest Park.

Ordinance No. 23 provides generally that no water well shall be drilled in South Forest Park and produce water from a depth of less than 400 feet. That is, all such water wells must produce domestic water from a depth below 400 feet, thereby saving the water in said area for the residents of North Forest Park. The well must have cast iron or steel surface pipe of 10 inches in diameter, and set in concrete at a depth of not less than 25 feet.

Ordinance No. 28 generally provides that before any residential structure can be built on lots in South Forest Park there shall be installed a septic tank of concrete construction of not less than 1,000 gallons, which shall discharge into a distribution box of not less than 27 cubic feet, and having laterals of not less than 1,000 feet, buried to a depth of 4 feet, with no laterals to be constructed closer than 15 feet to the sides of the property line of each lot. No laterals shall be constructed in the front yard, and no laterals to be closer than 50 feet to any water well. If the house has more than one bath, an additional 250 feet of laterals is required for each additional bath, or half bath.

Ordinance No. 29 generally provides that no new residence shall be constructed in the Town of Forest Park where the streets are unsurfaced until provisions have been made to surface the street at least 22 feet wide, with at least a 4-inch base of gravel or crushed rock or stone, and a bituminous surface of not less than one inch in thickness, with adequate provisions for drainage.

The denial of the plaintiff's permit to build a home is based upon a failure to comply with Ordinances Nos. 23, 28, and 29. The Court finds from the evidence that the plaintiff and intervenors complied with Ordinance No. 4, in that proper building plans were filed with the Town Clerk.

The following tables of comparisons are set out by the Court, of Ordinances Nos. 23 and 28 of the Town of Forest Park, the standards of the State of Oklahoma, and those of the City of Oklahoma City, pertaining to sanitation and water wells:

| TOWN OF FOREST PARK | STATE OF OKLAHOMA | OKLAHOMA CITY |
|---|---|---|
| Ordinance No. 23 applies only to South Forest Park and not to the undeveloped areas of North Forest Park with regard to water wells. | | |
| 1. Must be 400 ft. deep. | 1. No suggested depth. | 1. No suggested depth. |
| 2. Cased off with surface pipe without perforation to a depth of 25 feet. | 2. Cased off with surface pipe without perforation to a depth of 10 feet. | 2. Casing requirements depend on side walls and terrain. |
| 3. Surface pipe must be set in concrete. | 3. Surface pipe must be set in concrete. | 3. Surface pipe must be set in concrete. |
| 4. Cast iron or steel surface casing. | 4. Steel surface casing. | 4. Steel surface casing. |
| 5. Outside diameter of surface casing must be 10 inches. | 5. Outside diameter of surface casing depends on type of pump; average diameter 6 inches. | 5. No requirement regarding diameter; average is 6 inches. |

| TOWN OF FOREST PARK | STATE OF OKLAHOMA | OKLAHOMA CITY |
|---|---|---|
| Ordinance No. 28—pertaining to septic tanks and laterals, applies only to South Forest Park Addition and undeveloped portion of a small area north of the northern boundary of South Forest Park.<br><br>Minimum for 1 bathroom: | | |
| 1. 1000 gal. capacity septic tank. | 1. Capacity requirement is based on number of bedrooms:<br>2 bd/rms. — 750 gal.<br>3 bd/rms. — (FHA) 900 gal.<br>More than 3 — 1000 gal. | 1. Same as state requirements |
| 2. Distribution box of 27 cubic feet. | 2. No distribution box required, depends on perculation test. T's or Y's accepted in lieu of distribution box. | 2. No minimum capacity required on distribution box. |
| 3. Laterals buried 4 feet. | 3. Laterals buried at 27 or 28 inches. | 3. Laterals buried at 24 inches. |
| 4. 1000 feet of laterals plus 250 feet for each additional bath or one-half bath. | 4. Lateral footage depends upon soil test administered by engineer or sanitarian. | 4. 300 feet of laterals. |
| 5. Laterals embedded in gravel 2 feet thick on each side. | 5. Laterals embedded in gravel 10 inches thick on each side. | 5. Laterals embedded in gravel 3 inches thick on each side. |
| 6. Laterals not closer than 15 feet to property line. | 6. Laterals not closer than 5 feet to property line. | 6. Same as state requirement. |
| 7. Laterals in back yard only. | 7. Laterals can be in front or back yards. | 7. Same as state. |
| 8. Laterals no closer than 50 feet to any well on the premises nor w/i 50 feet of well on adjacent property. | 8. Same. | 8. Same. |

Inasmuch as the inevitable effect of ordinances, such as the ones involved here, is to limit private rights in the interest of public welfare, the exercise of the municipal power must be carefully guarded and be permitted only when the conditions and circumstances as shown disclose a need for the proper exercise of the police power. If it is shown that the ordinances, on pretense of serv-

ing the public, diminish the right of one man to enjoy his property in order to augment that of others, then there is not a proper exercise of that police power. In re Gilfillan's Permit, 291 Pa. 358, 140 A. 136, 137; Platte & D. Canal & Milling Co. v. Lee, Mayor, et al., 2 Colo.App. 184, 29 P. 1036, 1038.

There is no safer method of arriving at the object of the statute or ordinance passed by a municipality than to ascertain the purpose it may be used to subserve.

Title 11 O.S.A. § 401 provides: "For the purpose of promoting health, safety, morals, or the general welfare of the community, the legislative body of cities and incorporated villages is hereby empowered to regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes."

However, the mere recitation in an ordinance that the "general welfare" or the "health, safety, and morals" of the community require this ordinance is not binding upon this Court. We are warranted in going behind this recitation and examining what the evidence, in fact, is.

Ordinance No. 23, requiring that the depth of water wells in South Forest Park Addition must be no less than 400 feet, while other residents now settled in North and South Forest Park get their water from wells at depths of from 100 to 270 feet, and are not subject to any ordinance regulating well depth, is discriminatory.

The Ordinance is discriminatory on its face in that it applies to the wells on lots in the South Forest Park Addition only, and not to the undeveloped lots in North Forest Park or to the area immediately north of the South Forest Park Addition. The restriction must be general and uniform in the particular district, and may not serve private interest under a guise of public welfare. Where certain restrictions are imposed upon particular pieces of land in one area which are not imposed upon adjacent land which is indistinguishable in features involved, the ordinance imposing such restrictions is discriminatory and invalid. Louisville Gas & Electric Co. v. Coleman, 277 U.S. 32, 48 S.Ct. 423, 72 L.Ed. 770; 1 Rathkopf and Rathkopf on the Law of Zoning and Planning, Chapter 7, 3d Ed.

Ordinance No. 28 requires septic tank laterals of not less than 1,000 feet of laterals plus 250 feet for each additional bath or one-half bath, buried at a depth of four feet.

Without deciding whether the municipality has authority to enact such ordinances under 11 Okl.Stat. § 401, the Court concludes that the ordinance is discriminatory on its face. It attempts to prescribe sanitation requirements only for South Forest Park and a small additional area somewhat vaguely described. The ordinance does not in any way attempt to promulgate a comprehensive sanitation plan. Under the terms of the ordinance a group of residential lots on the south edge of Forest Park are subject to the ordinance while other residential lots, immediately adjacent to the prescribed area, are not likewise subject.

Ordinance No. 29, requiring the surfacing of streets at a width of 22 feet with at least a four-inch base of gravel, et cetera, applies to all of the Town of Forest Park and does not appear to be discriminatory. However, the Town does not have the authority under the law to require a property owner to surface the entire street in front of his property as a condition precedent to building a residential home. The owner of the property abutting a street can have at the most an interest in one-half of the street. As shown by 11 Okl.Stat. § 1004(8) and 11 Okl.Stat. § 659, dealing with vacation of a street or alley, the land to the center

of the street or alley attaches to and becomes a part of the adjoining lots.

Thus, even if the Town has the authority under Oklahoma law to enact this type of an ordinance, it is clear that this ordinance is unreasonable on its face in that it attempts to impose a financial burden on a property owner by requiring him to make improvements on property in which he has no interest, to-wit, the full width of the street.

These three ordinances which have been challenged seek to compel such inconveniences and hardships in the doing of certain acts that their result is to prevent the plaintiff and intervenors from enjoying vested rights which have received recognition in the Supreme Court of the United States.

In Village of Euclid et al. v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, it was said:

"It is true that when, if ever, the provisions set forth in the ordinance in tedious and minute detail, come to be concretely applied to particular premises, * * * or to particular conditions, or to be considered in connection with specific complaints, some of them, or even many of them, may be found to be clearly arbitrary and unreasonable."

And in a later case, Nectow v. City of Cambridge, 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842, the Federal Supreme Court, in considering the question of whether an ordinance might violate constitutional rights, held:

"The governmental power to interfere by zoning regulations with the general rights of the land owner by restricting the character of his use, is not unlimited, and, other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare."

Also Magnolia Petroleum Co. v. City of Broken Bow, et al. (1939), 184 Okl. 362, 87 P.2d 319, held:

"Equity will restrain by injunction the enforcement of a municipal ordinance which is void as being unconstitutional and in violation of the statutes of this state, where it appears that valuable property rights are invaded and irreparable injury will result from its enforcement."

Morris N. Brown testified that he and his wife own approximately 25 lots in South Forest Park which became a part of North Forest Park in 1955. He testified that there are now 16 homes in South Forest Park, all owned and operated by white people; that before he ever sold a lot to a colored person he knew the feeling of the Town of Forest Park toward Negroes and he talked with Mr. Box (attorney for the Town of Forest Park) and asked him if he wanted to buy his addition (South Forest Park Addition); that later (but before the passage of the ordinances in question) the Town sent the Mayor, Mr. Lacy, to Mr. Brown's home. Mr. Brown testified that:

"A Mr. Lacy said:

"'Now, folks, we are not in the real estate business and we don't want your property. It is not our baby. It's your baby. But if you sell any to the Negroes, we will raise building restrictions to where there never will be another house built in there.'

"Q And when was that?

"A That was in 1961.

"Q Was that before you had sold to Dr. Cox (a Negro)?

"A That was, yes, sir.

　　*　　*　　*　　*　　*　　*

"Q Do you know of anybody in South Forest Park that has a thousand feet of laterals?

"A No, sir.

"Q Do you know of anybody in South Forest Park that has a well 400 feet deep?

"A No, sir.

"Q Do you know of anybody in South Forest Park that paved the street in front of their house before they built?

"A No, sir. The county approved those streets and I put them in, and when Forest Park incorporated, they accepted them, and so did the city when they took us in, and Mr. Anderson's lot is just exactly the same kind of lot * * *"

The plaintiff and intervenors claim that they have been discriminated against by reason of the denial of their applications for building permits by the Town of Forest Park. It is claimed that the Town passed these ordinances in question for the purpose of preventing Negroes from residing in the area. This action has been brought under the Civil Rights Act, 42 U.S.C. § 1983, which provides:

"Every person who, under color of any * * * ordinance subjects * * * any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

 It is well recognized that the purpose or intent in the minds of those who compose a legislative body is not the standard for determining the validity of an ordinance or legislative act.

 An ordinance must be measured by its expressed purpose or its application. Here it is claimed that the ordinances are void. This Court is of the opinion that the ordinances are void under state and federal law, and evidence that the purpose for enacting any such void ordinances was to effect discrimination against the plaintiff and intervenors is admissible, and brings the case within the purview of the Civil Rights Act.

 The governing body of the Town of Forest Park, or the Town Clerk, on the application for building permits by plaintiff and intervenors, was without authority to determine title and right to possession of the subject property.

In Reinhart & Donovan Co. v. Refiners' Production Co., (1936), 175 Okl. 522, 53 P.2d 1116, the Supreme Court held in its syllabus:

"The procedure authorized and outlined by sections 6176 and 6179, O.S. 1931, (11 O.S. 407 and 410) for securing permits under or as an exception to municipal zoning ordinances is neither appropriate nor available for the determination of disputes between individuals concerning the title to or right of possession of real property."

 The Court concludes that although the plaintiff and the intervenors did not appeal the action of the Town Clerk denying them building permits to the Board of Trustees, the failure to appeal does not defeat their right to relief in this Court under the Civil Rights Act. Such an appeal would, from all the evidence, be to require the doing of a useless thing. McNeese v. Board of Education for Community Unit School District 187, Cahokia, Illinois, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622, says:

"Relief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided a remedy.

"The purposes (of the Civil Rights Act) were several-fold—to override certain kinds of state laws, to provide a remedy where state law was inadequate, 'to provide a federal remedy where the state remedy, though adequate in theory, was not available in practice' and to provide a remedy in the federal courts supplementary to any remedy any State might have."

The Court concludes from all of the evidence and all of the circumstances that Ordinances No. 23, No. 28, and No. 29 of the Town of Forest Park were enacted for the sole purpose of excluding Negroes, including the plaintiff and the intervenors, from purchasing property within the area of South Forest Park and building and residing thereon, and thereby excluding them from residing

within said area; that said Ordinances No. 23, No. 28 and No. 29, were not enacted in good faith but for malpurposes; that they constitute a scheme, guise, device, and a plan to prevent Negroes from enjoying their rights under the United States Constitution to buy and to build and to live in South Forest Park; and that the ordinances complained of have not been complied with by the white residents of the Town of Forest Park.

The Court sees no justifiable reason for the Ordinances No. 23, No. 28, and No. 29, to have been enacted, and they should be declared null and void and of no force and effect. The ordinances of the Town of Forest Park which have been in existence from 1955 to 1959 apparently have been adequate for the building, construction and living of the residents of North Forest Park, and seem to be adequate for the residents of South Forest Park, inasmuch as the ordinances for North Forest Park have formed the basis of a well-regulated residential community.

Therefore, judgment should be entered for the plaintiff and intervenors. The Court should retain jurisdiction until further order.