**Warren H. MacDONALD,
Plaintiff–Appellant,**

v.

**BOARD OF ADJUSTMENT OF the TOWN OF DEWEY BEACH, Consisting of John G. Farrow, Chairman, Charles McKinney, Joe Zieber, Robert Lynch & Patty Derrick, Bunting Construction Co., a Delaware corporation, Mardi Gras Associates, Inc., a Delaware corporation, and Bay Strand IV Associates, a Delaware corporation, Defendants–Appellees.**

Superior Court of Delaware,
Sussex County.

Submitted: Dec. 14, 1988.
Decided: Jan. 24, 1989.

Upon Plaintiff–Appellant's Appeal of a Decision of the Board of Adjustment of the Town of Dewey Beach.

DECISION AFFIRMED.

Kathi A. Karsnitz, of Young, Conaway, Stargatt & Taylor, Georgetown, for plaintiff-appellant.

Edward M. McNally, and Jane T. Monahan, of Morris, James, Hitchens & Williams, Wilmington, for Mardi Gras Associates, Inc. and Bay Strand IV Associates.

John A. Sergovic, Jr., Georgetown, for Bunting Const. Co.

OPINION

CHANDLER, Judge.

Pursuant to 22 *Del. C.* § 328, petitioner Warren H. MacDonald ("MacDonald") seeks review of a decision of the Board of Adjustment of the Town of Dewey Beach ("Board") affirming a decision of the town's Building Inspector to issue a building permit for the construction of 18 townhouse units by defendant Bunting Construction Company ("Bunting") on lands titled in the name of Bay Strand IV Associates ("property").[1]

On May 23, 1988, the Town of Dewey Beach ("Town") issued a building permit to Bunting to construct 18 townhouse units on the property. The Municipal Code of Dewey Beach requires a minimum lot size of 2,400 square feet per unit. On June 16, 1988, MacDonald, an owner of a townhouse unit neighboring the property, appealed the issuance of the building permit to the Board on the ground that Bay Strand IV did not have sufficient land to support the construction of 18 units. On July 13, 1988, the Board held a hearing on the appeal and affirmed the Building Inspector's issuance of the permit. MacDonald appealed that

decision to this Court and, pursuant to 22 *Del. C.* § 328(b), moved for an order staying the Board's decision and restraining the construction of more than 12 units at the property. The Court denied the motion for a stay on the ground that MacDonald failed to meet his burden of showing that he would suffer the possibility of irreparable injury if a restraining order was not granted. This is the Court's decision on the merits of the appeal.

*Facts*

On May 10, 1988, Bunting filed with the Town an application for a building permit. The documents Bunting submitted with the application included the following: approval of the Department of Natural Resources and Environmental Control ("DNREC") dated April 25, 1983, for the construction of a bulkhead on the property; a deed to the property between McMahon Bros., Inc. ("McMahon") and Mardi Gras, attached to which were excerpts of a title policy; and the registered surveyors' plot dated March 16, 1988, which tracks the submitted deed. The registered surveyors were Land Tech, Inc. ("Land Tech"), and a copy of the survey appears at the end of this opinion as Exhibit A.

The deed Bunting submitted to the Town evidenced the property upon which the condominiums were to be built. The title policy excerpts attached to the deed contain a property description which does not directly correspond to the deed description; the descriptions of the area of land in dispute differ in the title policy excerpt and the deed. It is not normal to submit a title examination or a title policy with an application for a building permit. The application process did not require, and the Building Inspector did not consider, the DNREC approval dated April 25, 1983, or the title policy excerpts attached to the deed.

To build 18 townhouse units requires 43,-200 square feet of land. The Land Tech survey depicted the following areas: Wet-

---

**1.** In the earlier decision in this case the Court, based on information before it, stated that the lands were titled in the name of Mardi Gras Associates, Inc. ("Mardi Gras"). Additional doc-uments submitted to the Court since that time indicate the lands belong to Bay Strand IV Associates ("Bay Strand IV").

lands (28,495 square feet); buildable area (30,479 square feet); Saulsbury right of way (12,617 square feet) and driveway easements (9,866 square feet).

On May 12, 1988, an attorney representing MacDonald wrote the Mayor of the Town and Town Commissioners and Planning Commission and requested no permits be issued for the construction on the property because the submitted plan included the following areas which should not be included in a density determination for the specified reasons:

"1. *Saulsbury Street:* The unimproved roadbed appears to be an unopened but dedicated street.

2. *Access Easements:* The site contains a 25 foot and 20 foot access easement to serve Bay Strand II and Bay Strand III.

3. *Wetlands:* The area located south of the existing bulkhead located at the mean high water line, appears to be lands of the State of Delaware in which the developer has no interest."

On May 23, 1988, the Building Inspector issued the requested building permit. The Building Inspector had included the buildable land (30,479 square feet) and the wetlands (28,495 square feet) in his calculations of density and concluded that the total area of 58,974 square feet supported the permit for 18 townhouses. He discarded the questioned easement area and the Saulsbury right-of-way in making his calculations.

In a June 6, 1988 letter to Bay Strand IV, Rod S. Hill, Jr., of the State of Delaware Department of Transportation, Division of Highways, noted that he understood the three questioned areas of land were surveyed and reserved from disposition by the State through its former Public Lands Commission now under control of the DNREC. Indicated thereon is that a copy of this letter was sent to William Hopkins, an employee of the DNREC.

On June 14, 1988, MacDonald appealed the Building Inspector's decision issuing the permit to the Board on the ground that the property in question did not contain sufficient square footage for the number of units authorized to be built because the State, not Bay Strand IV, owned the wetlands. The Board held a hearing on the appeal on July 13, 1988. Testimony came from Sam Fader, Building Inspector; Mr. MacDonald; Elton Murray, a registered professional land surveyor and co-owner of Land Tech; and David Toomey, a title searcher for Ticor Title Insurance.

Mr. Fader's testimony established the bases upon which he issued the building permit. Mr. MacDonald, who does not have a degree in engineering or law and who is not a licensed surveyor or civil engineer, introduced deeds purportedly evidencing the chain of title to the property. The deeds show that on December 8, 1983, McMahon acquired the property from Rehoboth–By–The–Sea Realty Company. The property description is, like the present deed, in metes and bounds, although the deed descriptions in the two deeds differ in some respects.

The next document introduced as a deed in the chain of title was between Joseph F. McSweeney, *et al.,* and Rehoboth–By–The–Sea Realty Company. According to MacDonald, the property in question is described as Block 1 which is laid out on the 1876 plot of Rehoboth City, and that same configuration of Block 1 appears in a 1926 map showing a plot of Rehoboth–By–The–Sea lands. The December 8, 1983 deed between Rehoboth–By–The–Sea and McMahon also references a quitclaim deed dated October 9, 1956. This quitclaim deed also refers to the property as Block 1 and refers to the 1876 plot of Rehoboth City and the 1926 map of the plot of Rehoboth–By–The–Sea lands. MacDonald maintained at the hearing that prior to 1983, the property was conveyed according to a block number on a plot, and if a person examines Block 1 on that plot back to 1876, the area designated as wetlands on the property is not included in the block. Thus, Bay Strand IV cannot claim the wetlands as its property.

MacDonald further testified that he walked across the disputed area for 20 years beginning in 1963 to reach his property; that there was an easement road to his property located on the disputed proper-

ty; that members of the public used the disputed property; and that the property generally was known as State land. MacDonald further testified that survey markers are on the property and, in his opinion, they were placed there to delineate the State line. According to MacDonald, this testimony was not offered as evidence to establish a public easement but to establish that the State owns the wetlands.

Mr. Murray was a witness for the property owners, and the purpose of his testimony was to show that even if the landowners used MacDonald's theory that Block 1 was what was conveyed to them, they still would have sufficient land to build the 18 townhouses. Mr. Murray supported his testimony with the modified Land Tech survey which appears at the end of this opinion as Exhibit B. According to him, the Block 1 outer line shown on the 1926 Rehoboth–By–The–Sea plot is not the same as the bulkhead line. The bulkhead line separates the buildable area from the wetlands. The dotted line on Exhibit B represents the Block 1 outer line and this wedge-like area ("the wedge") increases the buildable area by 7,274 square feet. According to the landowners, the wedge plus the original buildable area plus the driveway easements or the Saulsbury right-of-way would provide sufficient area to build 18 units. This information on the wedge was not before the Building Inspector when he issued the building permit.

David Toomey also testified for the property owners, and through him were introduced deeds and information on deeds prior to those MacDonald introduced which purportedly conveyed the wetlands along with the remaining property Bay Strand IV owns.

At the end of the hearing, the Board voted to deny the appeal on the basis that the appeal evidence was too technical for it to evaluate, and the Board should not be required to go beyond the evidence originally submitted to the Building Inspector. The Board's decision provided:

"... [T]he Board considered their [sic] options and, ultimately, decided that the issues presented on appeal were too com-

plex and too technical for them [sic] to issue a reasoned decision. Therefore, upon motion, it was determined that the appeal would be denied on the basis that the Building Inspector had sufficient documentation before him to issue the permit and that the evidence presented to the Commission was too technical to be reviewed and the Board would not go behind the deed and survey presented to the Building Inspector. Therefore, the appeal of Warren MacDonald is denied."

In connection with the appeal to this Court, the parties have submitted briefs. Included in respondent's answering brief is another letter from Rod Hill, dated June 28, 1988. Mr. Hill states that the subject lands are not a part of the State's highway system so Delaware Department of Transportation's only interest is reacting responsibly to a citizen inquiry. He also notes that William J. Hopkins will determine if the DNREC's Division of Parks and Recreation has an interest in the subject land, and he indicates that a copy of the letter was sent to Mr. Hopkins. This letter was dated approximately two weeks before the hearing before the Board. In a November 21, 1988 letter, MacDonald's counsel informed the Court that the Department of Justice's attorney assigned to the DNREC had informed her that the State had received MacDonald's underlying claim and intended to take steps to intervene in the action. Counsel's letter indicated DNREC's counsel received a copy of this letter. In a December 13, 1988 letter, MacDonald's counsel again stated that she had contacted DNREC's attorney who had indicated that she was preparing a motion to intervene in the action. Again, the DNREC's counsel was copied in on this letter. Despite being on notice of the matter since at least June 6, 1988, the DNREC has taken no action to assert any ownership interest in the wetlands.

### Discussion

■ MacDonald's position is that because the Building Inspector determined Bunting showed sufficient land to support the permit for construction of 18 town-

house units based on evidence of title, the Board then had to determine whether the property owners had good title to all the land. According to MacDonald, once a title issue was raised, the building permit applicant had the burden of proving it owned enough land to entitle it to construct 18 units. MacDonald further maintains that according to *Taylor v. The Bd. of Adj. of the Town of South Bethany,* Del.Super., C.A. No. 84A–AU2, Tease, J. (March 13, 1985), *aff'd.,* Del.Supr., 502 A.2d 979 (1985), once a title issue is raised, the building permit should not issue.

■ MacDonald's position that the Board should have determined the title issue is contrary to the law of this State and other jurisdictions. A municipal authority such as a board of adjustment may not determine title incident to the granting of permits. *Taylor v. The Bd. of Adj. of the Town of South Bethany,* Del.Supr., 502 A.2d 979 (1985); *Beckish v. Manafort,* 175 Conn. 415, 399 A.2d 1274, 1279 n. 7 (1978) (in this case, the applicant did not make any showing that she owned land or had the owner's consent to use the land in question); *Anderson v. Town of Forest Park, Oklahoma,* D. Okla., 239 F.Supp. 576, 584 (1965); *Nemet v. Edgemere Garage & Sales Co.,* N.Y. Supr., 73 N.Y.S.2d 921 (1947); *Lake Island Realty Co. v. McDermott,* N.Y.Supr., 96 Misc. 37, 160 N.Y.S. 450 (1916); *Reinhart & Donovan Co. v. Refiners' Production Co.,* 175 Okl. 522, 53 P.2d 1116 (1936).

The *Taylor* decision requires close examination. In *Taylor,* the applicants sought a building permit to fill in a portion of Anchorage Canal, and the Building Inspector denied it because he found the canal was part of the public canal system. On appeal, the Board of Adjustment of the Town of South Bethany determined it had no authority to decide legal ownership, and the issue before it was whether the Building Inspector erred in deciding the applicants were not entitled to a permit to fill a portion of the canal because it is a public canal. The Superior Court decided that "[b]ecause it appears from the record and documents that appellants may not have

title to the property in question, or a portion thereof, a building permit should not issue." *Taylor v. The Bd. of Adj. of the Town of South Bethany,* Del.Super., C.A. No. 84A–AU2, Tease, J. (March 13, 1985). The Supreme Court modified this Court's broad statement that the permit should not issue by the following passage:

"An administrative body, such as a Board of Adjustment, is generally without conclusive authority to adjudicate private title disputes incident to the grant of building permits or variances, McQuillen, *Municipal Corporations* (3rd Ed.) § 26.211, pp. 536–537 [*sic*]. But disputed ownership may be a basis for denial of a building permit. *Beckish v. Manafort,* Conn.Supr., [175 Conn. 415] 399 A.2d 1274 (1978). Where, as here, the evidence before the Board raises a substantial issue regarding creation of a public use or easement on the subject property, the Board may properly decline to grant a building permit which will interfere with, or extinguish, such claimed public use. Appellants are free, of course, to pursue any judicial remedy available to remove the apparent limitation on their title and the Board would be bound by the judicial result achieved."

*Taylor v. The Bd. of Adj. of the Town of South Bethany,* Del. Supr., 502 A.2d 979 (1985).

■ Thus, under *Taylor,* if a party disputes ownership on the grounds that there has been created a public use or easement on the subject property and shows substantial evidence of that public use or easement, then the Building Inspector and Board of Adjustment may refuse the permit. That rule is different from a *per se* rule requiring that if another party questions title, a building inspector must refuse to award the permit. The *Taylor* rule is also different from the proposition that if a building inspector does grant the permit after a party disputes title, then the Board must determine the title dispute.

The facts in *Taylor* are clearly distinguishable from these here. In *Taylor,* had the permit been granted, the easement area would have been obliterated. Here, even if

an easement existed, the area possibly still could be used for determining density requirements. The only dispute in this case centers on *title*. The *Taylor* rule is limited to the situation where substantial evidence establishes an easement. Weighing such evidence is within the building inspector's and Board's area of expertise. However, a building inspector and a board of adjustment do not have the expertise to determine whether there is a title defect as has occurred in this case.

■■■ Thus, this Court cannot accept MacDonald's position. If a party presents a deed evidencing ownership, he has met his burden of proving ownership to the building inspector. If another party disputes ownership on the ground of a defect in title, then that party has the burden of proof of disproving the accuracy of an instrument of title to land. *Siemiesz v. Amend*, 237 Md. 438, 206 A.2d 723 (1965). The proper forum for such a challenge to the title is the courts, and not the building permit procedure. *Taylor v. Bd. of Adj. of the Town of South Bethany, supra; Beckish v. Manafort, supra; Anderson v. Town of Forest Park, Oklahoma*, D. Okla., 239 F.Supp. 576, 584 (1965); *Nemet v. Edgemere Garage & Sales Co., supra; Lake Island Realty Co. v. McDermott, supra; Reinhart & Donovan Co. v. Refiners' Production Co., supra*. That procedure particularly is appropriate where, as here, a third party is disputing title and the supposed owner of the wetlands, the State, has never asserted any rights despite being on notice of Bay Strand IV's assertion of title in the wetlands since at least June 6, 1988.

On an appeal from a decision of a board of adjustment, this Court's scope of review "is limited to correction of errors of law and to determining whether or not substantial evidence exists on the record to support the Board's findings of fact and conclusions of law. When such evidence exists, this Court may not reweigh it and substitute its own judgment for the Board's. (Citations omitted)." *Janaman v. New Castle Cty. Bd. of Adjustment*, Del.Super., 364 A.2d 1241, 1242 (1976), *aff'd.*, Del. Supr., 379 A.2d 1118 (1977). This Court, after an examination of the record on review, may reverse or affirm in part or in whole, or may modify the Board's determination. 22 *Del. C.* § 328(c). For the foregoing reasons, the Court affirms the Board's decision whereby it refused to try title and determined that the Building Inspector correctly issued the permit because the applicant presented a deed and survey evidencing ownership of an area of land large enough to support the construction of 18 townhouse units.

The Board did not make any findings of fact and conclusions of law on whether the inclusion with the buildable area of the wedge, Saulsbury right-of-way, and/or driveway easements provides sufficient land for the building of 18 condominium units. Since this issue was not raised on appeal, the Court does not address it.

Again, as in my prior decision in this matter, I note that this decision does not resolve the apparent title dispute. Until the dispute is resolved, the builders and owners proceed at their own risk since if the owners do not own the wetlands, their building permit may be void.

An Order has been entered consistent with this Opinion.

### ORDER

For the reasons set forth in this Court's Opinion entered in this case on this date, it is

ORDERED that the decision of the Board of Adjustment of the Town of Dewey Beach in this matter is AFFIRMED.

Reduction of Land
Tech Survey

Reduction of Land
Tech Survey