STATE, ex rel. James Conly, v. CHARLES E. KLINGMEYER, G. LESTER CLEAVER and ELLWOOD S. LEACH, Commissioners of the Levy Court of New Castle County.

*(February* 5, 1957.)

CAREY, J., sitting.

*Clyde M. England, Jr.,* (of Killoran and Van Brunt) for plaintiff.

*Michael A. Poppitti* for defendants.

Superior Court for New Castle County, No. 838, Civil Action, 1955.

CAREY, J.:

■ The question presented here is whether or not the stipulated facts justify summary judgment for the relief sought. That relief would consist of an order directing the rezoning of plaintiff's land from the R-1-B classification to the C-1 classification. Under familiar rules pertaining to summary judgments and actions of *mandamus,* it could be granted only if the undisputed facts clearly show the lands to be wrongly placed in R-1-B, and only if the Levy Court legally has the non-discretionary duty of placing the lands in C-1.

■ Plaintiff contends that the Levy Court's action is an unconstitutional application of the zoning law with respect to his lands; he does not challege the validity of the law itself. In that situation, whether *mandamus* is an appropriate remedy, at least before the exhaustion of all possible administrative remedies, is an interesting question, but need not be decided. *Cf.* 1 *Metzenbaum Law of Zoning* 716. Conceding that strict enforcement of the restrictions governing R-1-B districts would so adversely affect these lands as to constitute a legally cognizable wrong, we still should decline to order the property placed in C-1 unless convinced, not merely that C-1 is a suitable zone, but is the only proper one; otherwise, we would be exercising a discretion which is vested in the administrative authorities.

■ The brief filed on behalf of defendant seems not to deny that the lands in question ought to be treated as two separate lots. The size of each is less than the minimum requirement

for a dwelling in R-1-B. Obviously, therefore, unless plaintiff can obtain relief in some fashion, the lots are of doubtful value. The result would be confiscation. From that fact alone, however, it does not *necessarily* follow that rezoning to C-1, or to any other particular commercial or manufacturing classification, or even any rezoning is required in order to remove the unjust restriction. At this stage of the case, the record does not conclusively establish that the lots cannot be satisfactorily used for residences. Conceivably, a rezoning to R-1-C or the granting of a variance might be adequate.[1] In any event, there is clearly not a sufficient showing in the record now before me to justify summary judgment for plaintiff for the relief sought, based solely upon the difficulty concerning lot sizes.

The approval of plaintiff's scheme of restrictions in April 1953 in and of itself created no property right in him to prevent a change by the zoning code in the permissible use of the land. 2 *Metzenbaum Law of Zoning* 1143, *etc.* No permit was ever requested for the erection of a building on the Wilson road lot. The permit, plus the work done by virtue of it, for the building on the Marsh road lot might conceivably constitute a bar to any interference with the completion of the building thus started, depending upon a number of factors, some of which are not clarified in the present record. Whether Article XVII, Section 1 of the Zoning Code would justify stopping such completion might ultimately be an important issue. The significant point here is that the vested right which plaintiff thus acquired, if any, was the right to complete the building and to use it for the purpose designated in the original permit—not the right to insist that the land be placed or kept in a particular zoning

---

[1]The power of the Board of Adjustment to grant variances for this particular reason is expressly conferred by Title 9, Section 2617 *Revised Code*, which is much broader than the statute set forth in *State ex rel. Nigro v. Kansas City*, 325 *Mo*. 95, 27 *S.W.* 2d 1030. It would hardly be argued that the Levy Court, in adopting a zoning code, can restrict the powers expressly conferred upon the Board of Adjustment by the Legislature. In fact, the Levy Court has not attempted to do so. See Article XVII, Section 4 (7) of the Zoning Code.

classification. Plaintiff's vested right, if it exists at all, therefore forms no sufficient foundation for the relief prayed for in the present petition.

The letter of March 4, 1954 addressed to the Zoning Commission might have a certain appeal for some purposes, but it cannot change the result in the present action. If we assume that the Commission would have made the recommendation suggested in their affidavit, we still cannot assume that the Levy Court would have accepted it. This is especially true when we remember that the Commission has since submitted such a recommendation and that the Levy Court has refused to adopt it.

To summarize my conclusions, I am convinced that strict enforcement of the R-1-B classification as to plaintiff's lots would amount to confiscation, and that plaintiff is entitled in some manner to relief from those restrictions. I cannot, however, grant relief in this *mandamus* action unless plaintiff can establish that rezoning is the only way to obtain relief; if that be done, I could doubtless at least direct the Levy Court to rezone in some way so as to relieve the difficulty. Finally, even if relief by *mandamus* should be found to be proper, the zone into which the lands should be put would have to be determined by the Levy Court, unless it be established that C-1 is the only classification which would relieve plaintiff's dilemma.

The present record is insufficient to justify the summary judgment prayed for. No motion to dismiss is before the Court, and I do not pass upon certain points which such a motion would bring up. Plaintiff's motion will be denied.