W. Rudolph Reinbacher and Christi A. Reinbacher,
Plaintiffs,

*vs.*

James S. Conly and Charles E. Klingmeyer, G. Lester
Cleaver and Joseph F. Dayton, constituting the Levy Court
of New Castle County, Delaware, and Levy Court of New
Castle County, Delaware, a body politic,
Defendants.

*New Castle, February 3, 1958.*

*On Motions for Summary Judgment, April 16, 1958.*

*William E. Taylor, Jr.,* Wilmington, for plaintiff.

*Michael A. Poppiti,* Wilmington, for defendants, the Commissioners of the Levy Court of New Castle County, and the Levy Court of New Castle County.

*Clyde M. England, Jr.,* for defendant, James S. Conly.

MARVEL, Vice Chancellor: The complaint filed herein is concerned with the use to which a small plot of land located in Brandywine Hundred may lawfully be put. The defendant, James S. Conly, now has administrative approval, given under a zoning plan and regulations promulgated by the Levy Court of New Castle County pursuant to the provisions of Chapter 26 of Title 9, *Del.C.* to use the plot in question for commercial-neighborhood shopping purposes. The plot fronts on Wilson and Marsh Roads at a point where these streets run together at an angle of approximately sixty degrees and is delineated on maps of record in this proceeding.

On April 30, 1957 on application of Mr. Conly the Levy Court of New Castle County apparently acting under the provisions of § 2611 of Title 9, *Del.C.* by formal resolution rezoned the plot in question, which at the time was classified R-1-B (residential), to C-1 (commercial-neighborhood shopping), an act which plaintiffs seek to have declared illegal, void and of no force and effect in law. Plaintiffs contend that the action of the Levy Court, whether based on a theory of mistake in the original act of zoning the plot as R-1-B or on a finding that the land is useless except for commercial purposes, or in a combination of both grounds, was taken arbitrarily and capriciously and without foundation in fact or in law.

Plaintiffs ask this Court to direct the Levy Court to rescind its resolution of April 30, 1957 and permanently to enjoin any rezoning of the plot in question from R-1-B to C-1.

Defendants filed a motion to dismiss but later entered into a stipulation with plantinffs on a record of documents bearing on the status of the land in question, and moved thereafter for summary judgment. Plaintiffs have filed a similar motion.

While the desire of all parties to get on to the end of this litigation is understandable in view of the long drawn out and bitter struggle between the landowner, Conly, and his neighbors concerning uses to which the land here involved may lawfully be put, I have grave

doubts as to the jurisdiction of this Court to adjudicate the issue here presented. Because of this doubt I decline to proceed further with this case until the parties have briefed and argued defendants' motion to dismiss.

Chapter 26 of Title 9, *Del.C.* is silent on equitable relief to be granted in connection with its operation and enforcement except to provide for the instituting of an action for injunctive relief by the Levy Court or by any owner of real estate within the district in question in case any building is erected or proposed to be erected or land used in violation of such chapter or regulations thereunder.

■ Assuming the action of the Levy Court here complained of is "spot zoning" or "piecemeal zoning", condemned under certain circumstances (see *Annotations* in 51 *A.L.R.2d* 263), or is otherwise improper, mandamus is the normal remedy for the correction of an alleged breach of ministerial duty in jurisdictions such as Delaware where law and equity distinctions have been preserved.

On notice a briefing schedule and argument date on defendants' motion may be fixed.

### On Motions for Summary Judgment.

MARVEL, Vice Chancellor: In my opinion of February 3, 1958 in this case, I stated that I would fix a briefing schedule on defendants' motion to dismiss before taking any action on the pending motions for summary judgment. I so ruled because of doubts as to this Court's jurisdiction to grant the relief prayed for. Thereafter, counsel for both plaintiffs and defendants filed a letter with the Court which in effect requested the Court to reconsider its ruling and concluded:

"Therefore all the parties to this action believe that the Court should and must decide the question presented (namely whether

the rezoning of Mr. Conly's property by the Levy Court was illegal) on the basis of the contentions set forth in the briefs and at oral argument on the cross-motions for summary judgment".

On reconsideration of the briefs and argument of counsel I have decided that I can and should dispose of the issue raised by the pleadings and other papers of record, namely whether or not the Levy Court in rezoning property of the defendant, Conly, acted arbitrarily, capriciously and without authority in fact or in law. If such rezoning was flagrant "spot zoning" or otherwise capricious and arbitrary, I am now satisfied that the action of the Levy Court may be enjoined and that mandamus in such event would not be an appropriate remedy.

While the resolution here under attack, which was adopted by the Levy Court on April 30, 1957, simply ordered that the disputed area be rezoned from R-1-B to C-1 without giving reasons for such change, in their affidavit of November 7, 1957 the Commissioners stated as follows:

"2. That in arriving at our decision to adopt the aforesaid resolution we considered all matters which appear in the Record of a public hearing before the Levy Court on April 9, 1957; all matters which appear in the Record of a hearing before the Zoning Commission of New Castle County on February 27, 1957; the recommendation of said Commission dated March 21, 1957 and all items submitted to the Levy Court as part of said report and recommendation of the Zoning Commission; and the decision of Judge James B. Carey dated February 5, 1957 in *State ex rel. Conly v. Klingmeyer, Del.,* 141 *A.2d* 451, in which the Court stated that "* * * strict enforcement of the R-1-B classification as to plaintiffs' lot would amount to confiscation * * *".

The recommendation of the New Castle County Zoning Commission to the Levy Court, dated March 21, 1957 was more explicit. It stated:

"Dear Sir:

"This is a final and complete report on Public Hearings held at 2:00 P.M. Wednesday, February 27, 1957, in Levy Court Room, and continued in session until the petitions for rezoning #14, #182, and Nos. 187-200 inclusive had been heard.

"The Commission met in business session, and after consideration of the material submitted by the petitioner, James S. Conly, and the additional data brought out in the public hearing, the Commission strongly recommends approval of extending the existing C-1 (neighborhood shopping) District to the limits as designated on the final plat of Mayfield, approved for 'business' by the Regional Planning Commission on April 16, 1953, and recorded in the office of the Recorder of Deeds, May 6, 1953, Vol. III, Page 6.

"On February 23, 1955, the petitioner originally appeared before the Zoning Commission in public hearing for rezoning from R-1-B to C-1 the remainder of the irregular shaped plot on southwesterly corner of Marsh and Wilson Roads that had been set aside for 'business.' The Zoning Commission on March 22, 1955 recommended approval of petition, based on the fact that prior to enactment of Zoning, the Regional Planning Commission in all good faith approved the area for 'business' and the deed of restrictions filed with the final plat described in detail the limits to which the restrictions applied, and did not include any part of this 'business' district. This petition was denied by the Levy Court May 10, 1955.

"The Zoning Commission admits that through an oversight the rightful limits of the petitioner's business property was overlooked in preparing the Zoning Map for Brandywine Hundred as of November 23, 1953, and at this time, the Commission recommends that the C-1 District now be extended to conform to the 'business' area as approved by Regional Planning, and as recorded May 6, 1953.

"The Commission will be pleased to confer with the Levy Court.

"Very truly yours,

"New Castle County Zoning Commission

"John F. Porter, Jr., Chairman"

Earlier Judge Carey in declining to enter summary judgment on Conly's application for a writ of mandamus stated, 141 *A.2d* 451:

"\* \* \* Under familiar rules pertaining to summary judgments and actions of mandamus, it could be granted only if the undisputed facts clearly show the lands to be wrongly placed in R-1-B, and only if the Levy Court legally has the non-discretionary duty of placing the lands in C-1.

"Plaintiff contends that the Levy Court's action is an unconstitutional application of the zoning law with respect to his lands; he does not challenge the validity of the law itself. In that situation, whether mandamus is an appropriate remedy, at least before the exhaustion of all possible administrative remedies, is an interesting question, but need not be decided. Cf. 1 *Metzenbaum Law of Zoning* 716. Conceding that strict enforcement of the restrictions governing R-1-B districts would so adversely affect these lands as to constitute a legally cognizable wrong, we still should decline to order the property placed in C-1 unless convinced, not merely that C-1 is a suitable zone, but is the only proper one; otherwise, we would be exercising a discretion which is vested in the administrative authorities."

Judge Carey concluded that while Conly had no vested right not to have his property zoned in a manner at variance with his scheme of restrictions, "\* \* \* I am convinced that strict enforcement of the

R-1-B classification as to plaintiff's lots would amount to confiscation, and that plaintiff is entitled in some manner to relief from those restrictions."

Upon the case being returned to the Zoning Board, such Board again recommended to the Levy Court that the lands in question be rezoned to C-1 and the Levy Court thereupon accepted such recommendation in the form of the resolution here under attack.

"2611(a) of Title 9, *Del.C.* provides as follows:

"(a) The Levy Court may, from time to time, make amendments, supplements, changes or modifications (herein called 'changes') with respect to the number, shape, boundary or area of any district or districts, or any regulation of, or within, such district or districts, or any other provision of any zoning regulation or regulations, but no such changes shall be made or become effective until the same shall have been proposed by or be first submitted to the Zoning Commission."

It appears from the record before me that the requirements of this paragraph as well as those of the other paragraphs of § 2611 were complied with and that the resolution of the Levy Court was clearly not arrived at arbitrarily or capriciously but on the contrary was adopted only after hearing the contentions of all interested parties who appeared, and after carefully considering the relevant facts.

There would seem to be no doubt but that rezoning under this section may be sought and obtained from the Levy Court in a proper case. That is to say, a person aggrieved by an existing zoning condition is not required merely to seek a variance by appeal to the Board of Adjustment under § 2617 of Title 9, *Del.C.*

There would further seem to be no doubt but that zoning regulations are not contracts between the public authorities on whom

the duty of zoning under a general statute or ordinance rests and interested property owners, and that property owners, such as plaintiffs, who have purchased land subsequent to the effective date of a general zoning plan have no vested right to have the neighborhood in which they own property zoned perpetually in a fixed manner. See *Annotation,* 138 *A.L.R.* 500. On the other hand, individual grants of immunity from a comprehensive zoning plan with no apparent purpose other than to help an individual flaunt such a general plan for personal gain are usually condemned by courts as arbitrary and illegal acts of "spot zoning", *Annotation,* 51 *A.L.R.2d* 263.

█ Here, it would serve no useful purpose to review in detail the tortuous history of this unfortunate litigation. Suffice it to say that it is apparent from the record before me that the Zoning Commission, and on reconsideration the Levy Court clearly decided that what they considered to be an injustice in the original zoning of the Conly land here involved should be corrected. Counsel for Mr. Conly have not submitted a case clearly holding that mistake alone justifies rezoning (but see dicta so indicating in *American Oil Co. v. Miller,* 204 *Md.* 32, 102 *A.2d* 727, and *Eckes v. Board of Zoning Appeals,* 209 *Md.* 432, 121 *A.2d* 249) however it would seem only reasonable to conclude that zoning authorities have power to correct their own errors particularly in a case such as this where deed restrictions in line with the Levy Court's ultimate decision had been a matter of public record prior to the effective date of County zoning. Significantly, the relief contemplated by the section of the statute having to do with appeals to the Board of Adjustment is not the correction of mistakes as to basic zoning but the correction of "* * * error in any order, requirement, decision or refusal made by an administrative official or agency based on or made in the enforcement of the zoning regulations."

In my opinion, the careful and reasonable correction here made by resolution of the Levy Court does not differ materially from the type of rezoning approved in *Keller v. City of Council Bluffs,* 246 *Iowa* 202, 66 *N.W.2d* 113, 51 *A.L.R.2d* 251; *Offutt v. Board of Zoning Appeals of Baltimore,* 204 *Md.* 551, 105, *A.2d* 219; *Kenny v. Kelly,*

*Tex.Civ.App.,* 1953, 254 *S.W.2d* 535, and *Eggebeen v. Sonnenburg,* 239 *Wis.* 213, 1 *N.W.2d* 84, 138 *A.L.R.* 495. Obviously each case concerned with special treatment for a small area within or adjacent to a substantial tract where a higher classification is to remain in force must be considered on its merits. I am satisfied that in this case the zoning authorities have acted fairly and reasonably after giving full consideration to the arguments of plaintiffs and others in the neighborhood who object to the correction which has been ordered.

While the Delaware statute governing zoning changes does not contain a precise guide for the Zoning Board and the Levy Court for the exercise of their discretion in ordering zoning changes, it does provide for ample notice to all interested parties and a full opportunity for them to be heard. Furthermore, the section of the statute here involved does not require that any change effected under such section shall be specifically directed towards the promotion of public health, welfare, morals and the like, although these are factors, inter alia, to be considered by the Levy Court in all zoning decisions, § 2603, Title 9 *Del.C.* I conclude that broad administrative discretion having been vested in the zoning authorities to grant zoning changes after a full hearing, there is no showing of an abuse of such discretion in this case. Plaintiffs' motion for summary judgment is denied and defendants' motion is granted.

Order on notice