Frank E. ACIERNO

v.

Michael MITCHELL, in his official and individual capacity; New Castle County, Appellants.

No. 93–7031.

United States Court of Appeals, Third Circuit.

Argued Aug. 10, 1993.

Decided Oct. 4, 1993.

Collins J. Seitz, Jr. (argued), Connolly, Bove, Lodge & Hutz, Wilmington, DE, for appellant New Castle County.

John J. Yannacone (argued), Yannacone, Fay, Baldo & Daly, Media, PA, Carl A. Agostini, Agostini & Levitsky, Wilmington, DE, for appellee.

Barry M. Willoughby (argued), Young, Conaway, Stargatt & Taylor, Wilmington, DE, for appellant Michael Mitchell, in his official and individual capacity.

Before: SCIRICA, COWEN and ROSENN, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

In this zoning dispute, we again address ripeness in the context of a constitutional challenge to a land-use decision. *See Taylor Inv., Ltd. v. Upper Darby Tp.*, 983 F.2d 1285 (3d Cir.1993). Because we find the challenge premature, we will vacate and remand with directions to dismiss without prejudice.

### I.

#### A.

Plaintiff Frank Acierno owns property in New Castle County, Delaware. Under New Castle County's zoning ordinance, a small part of the property is zoned C-2 (a classification for general commercial uses, Ordinance § 23-32) and the larger part M-1 (a classification for "light" manufacturing, Ordinance § 23-34).[1] In 1971, plaintiff submitted a development plan to build an enclosed shopping mall on the M-1 portion of the property. At that time, the County's zoning ordinance permitted all commercial uses, including shopping malls, on M-1 property.

For reasons not relevant to this appeal, plaintiff's final development plan was rejected by County authorities, a decision the Delaware Court of Chancery upheld on review. The Delaware Supreme Court reversed, directing plaintiff's development plan be approved and recorded. *Acierno v. Folsom*, 337 A.2d 309 (Del.1975).

Before the Delaware Supreme Court rendered its decision, New Castle County amended its zoning ordinance. The amendment, effective in November 1971, excluded all commercial uses from M-1 districts. In directing the County to record plaintiff's final

development plan, however, the Delaware Supreme Court did not address the effect of this amendment on plaintiff's property. *See id.* Nevertheless, on October 28, 1975, the New Castle County Council complied with the court's directive and approved plaintiff's plan.

Plaintiff's property sat idle between October 1975 and 1987. Then, in September 1987 and again in November 1988, plaintiff submitted subdivision plans, along with surveys, drainage area plans, site plans, grading and utility plans, and road plans. With these subdivision plans, plaintiff proposed to build a "strip-mall" (instead of an enclosed facility) and a 70,000 square foot commercial building on the property. The Department of Planning and the County Council approved the plans.[2]

#### B.

Notwithstanding the plan approvals, plaintiff was required to secure a building permit to build on the property. Del.Code Ann. tit. 9, § 3005(a) (1989). Any person seeking a building permit in New Castle County must apply to the Development and Licensing Division of the Department of Public Works. *Id.* § 1361(2)(a);[3] Ordinance § 23-15. The Development and Licensing Division has power to "[d]etermine whether the applicant is properly entitled" to the permit, and if not, it must notify him in writing with the reasons for rejection. Del.Code Ann. tit. 9, § 1361(2)(a)(2), (4). The Development and Licensing Division may only issue permits that comply with the zoning ordinance and other pertinent law. *Id.* § 1361(2)(b); Ordinance § 23-15.[4]

---

1. Plaintiff's property was originally divided into two pieces. He owned one small tract (zoned C-2) and was a long-term lessor of a larger adjoining tract (zoned M-1). Plaintiff purchased the larger tract sometime in the early 1980s. The smaller, C-2 portion of the property is not at issue in this case.

2. In approving the subdivision plans, the Department of Planning required plaintiff to include on the plans a reference to "previous court action that permitted commercial development in the M-1 zoning district."

3. Although § 1361 authorizes the Department to issue any "license," § 1362(1) defines a license as "any license or permit required by statute, ordinance or regulation to be obtained as a prerequisite to engaging in any activity [on] ... any property." By statute, building permits are a prerequisite to construction on any property. *See.* Del.Code Ann. tit. 9, § 3005(a).

4. "The requirements and standards to be met by applicants for licenses shall include those established by law." Del.Code Ann. tit. 9, § 1361(2)(b). The Division (referred to as a Department in the Delaware Code) is charged to

Although the Development and Licensing Division has authority to issue building permits, it is statutorily required to coordinate with other county agencies in making this decision. Other agencies may prescribe conditions on the issuance of a permit if the condition relates to a function of that agency. Del.Code Ann. tit. 9, § 1361(2)(b). The agency must certify the conditions to the Division in writing, and the Division must enforce the condition as a prerequisite to issuance of the permit. *Id.* Moreover, the Division must, at the request of any county officer, department, or board, make a special investigation of "any property upon which unlawful conditions are believed to exist or of the manner in which the holder of any license is operating under it." *Id.* § 1361(6).

If the Development and Licensing Division refuses to issue a permit, the decision is "subject to determinations made by the Board of Adjustment on appeal taken" from that refusal. *Id.* § 1361(1); Ordinance § 23–19(a); *see, e.g., MacDonald v. Board of Adjustment,* 558 A.2d 1083, 1084 (Del.Super.Ct.1989) (Board of Adjustment reviewed issuance of building permit); *In re Auditorium, Inc.,* 46 Del. 430, 84 A.2d 598, 599 (Super.Ct.1951) (Board of Adjustment reviewed denial of building permit), *cause remanded on other grounds,* 47 Del. 373, 91 A.2d 528 (1952).[5] The Board of Adjustment's primary function is to interpret the zoning ordinance, *see* Del.Code Ann. tit. 9, § 1352; Ordinance §§ 23–82, 23–83, and it has authority to hear and decide "[a]ppeals in zoning matters where error is alleged in any order, requirement, decision or determination made by an administrative officer or agency in the enforcement of any zoning ordinance, code regulation or map...." Del.Code Ann. tit. 9, § 1352(a); *see* Ordinance §§ 23–84 (power to hear appeal on all zoning matters). The Board

may reverse or affirm, wholly or partly, or modify the order, requirement, decision or determination appealed from, and make such order, requirement, decision or determination as ought to be made, and, to that end, it shall have all powers of the officer or agency from whom the appeal was taken.

Del.Code Ann. tit. 9, § 1352(e). The County Council cannot restrict the Board's powers, *State ex rel Conly v. Klingmeyer,* 51 Del. 203, 141 A.2d 451, 452 n. 1 (1957), and the Board's decisions are reviewed only on appeal to the Delaware Superior Court, *see* Del.Code Ann. tit. 9, § 1353(a).

## C.

In December 1991, plaintiff submitted an application for a permit to build a 112,000 square foot commercial building. David Biloon, New Castle's Chief of the Development and Licensing Division, rejected the application. In a letter dated December 18, 1991, Biloon provided two reasons for the rejection. First, plaintiff's permit application impermissibly varied from his record plans, which authorized a building of 70,000, not 112,000, square feet. Second, because plaintiff's property was zoned M–1, Biloon stated that "[c]ommercial ventures of this nature cannot be situated on the lands which contain manufacturing zone classification" under the zoning ordinance.

Biloon based his interpretation of the zoning ordinance on several memoranda from the County's Law Department. Approximately eight months before plaintiff submitted his building-permit application, the First Assistant County Attorney, defendant Michael Mitchell, researched the land-use history of the property in response to a request for a zoning certification by one of plaintiff's prospective tenants.[6] In the course of his

"enforce compliance with the Zoning Code and regulations thereunder...." *Id.* § 1361(1).

**5.** The County has also created another board, the Board of License Inspection and Review, for "any person aggrieved by the issuance, transfer, renewal, refusal, suspension, revocation or cancellation of any county license [including a building permit]...." Del.Code Ann. tit. 9, § 1363; Ordinance § 2–44. The Board of License In-

spection and Review may take evidence from the aggrieved party or the County and must render a decision within 90 days of the filing for appeal. The Board "may affirm, reverse, vacate or revoke the action" of the Department of Development and Licensing. Ordinance § 2–44.

**6.** The prospective tenant intended to operate a commercial establishment on plaintiff's property. Because the tenant was aware the property was

research, Mitchell learned that plaintiff had recorded three plans for the property, all for commercial uses, but that the property was zoned for manufacturing uses only. He also knew that, after November 1971 and before approval of plaintiff's final plan, the County had excluded all commercial uses from property zoned for manufacturing. Based on this, Mitchell sent a memorandum to Biloon on April 18, 1991, stating

> no building permit should be issued for any construction on this site [i.e., plaintiff's property] until extensive review and consultation between the Division of Development and Licensing, Department of Planning and Department of Law is initiated and concluded concerning any proposed use.... [A] general hold should be placed on any building permits that could be issued for this site.

Mitchell sent copies of his memorandum, as well as subsequent memoranda, to other County officials, stating that plaintiff's record plans should be accorded no effect in light of the alleged zoning defect and requesting the officials to "take any steps necessary to ensure that no permits are issued for this site until complete review and consultation is accomplished with this Department and the Department of Planning."

Biloon adopted Mitchell's opinion by memorandum dated May 3, 1991. As we have noted, Biloon rejected plaintiff's building-permit application in December 1991, based in part on his agreement with Mitchell's opinion. Plaintiff did not appeal the decision.

In May 1992, plaintiff submitted another building-permit application. Again proposing to build a commercial building, plaintiff cured the size discrepancy by requesting a permit for a 70,000 square foot building. Mitchell and Biloon discussed the revised

application. Biloon requested instructions, and Mitchell responded "[i]t is not zoned for a retail department store. He does not get a permit." Biloon rejected plaintiff's application by letter dated June 4, 1992, noting "the conflict between the proposed commercial use and the manufacturing zoning classification for the property remains unchanged." Again, plaintiff did not appeal the decision.

Instead, plaintiff filed a three-count complaint under 42 U.S.C. § 1983 (1988) in the United States District Court for the District of Delaware. In count I, plaintiff claimed the County and Mitchell violated his right to substantive and procedural due process of law and equal protection of the laws. He requested injunctive relief "compelling the issuance of the subject permit," as well as compensatory damages and costs (and punitive damages against Mitchell). In count II, plaintiff petitioned for mandamus, directing the County to issue the building permit. Count III was a state-law claim against Mitchell for intentional interference with prospective economic advantage.

Before discovery was completed, defendants filed a motion for summary judgment, and plaintiff filed a motion for a preliminary injunction. The district court ordered expedited discovery and held an evidentiary hearing. The court granted plaintiff's motion for a preliminary injunction, directing defendants to review plaintiff's application for a building permit. The court denied defendants' motion for summary judgment on count I, but granted summary judgment on counts II and III.[7] The court also determined Mitchell was not entitled to qualified immunity under *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Defendants now appeal.[8]

---

zoned for manufacturing, it contacted Mitchell to determine whether a commercial use was proper.

7. Plaintiff did not appeal the grant of summary judgment on these counts.

8. The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). Our jurisdiction lies under 28 U.S.C. § 1292(a)(1), which gives any party the right to appeal immediately the grant of a preliminary injunction. Although the County complied with the terms of the in-

junction and issued the building permit, this appeal is not moot. At oral argument, plaintiff's counsel conceded there had been no "earth-disturbing activity" on the property, and it is still possible to undo the effects of the County's compliance with the injunction. *See* Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3533.2 (1984); *see also Brownlow v. Schwartz*, 261 U.S. 216, 43 S.Ct. 263, 67 L.Ed. 620 (1923) (appeal from injunction, which directed issuance of building

## II.

■ For the first time on appeal, the County contends plaintiff's claims are not ripe for review.[9] Although we generally decline to address arguments for the first time on appeal, "ripeness affects [the] justiciability" of plaintiffs claims, *Taylor Inv., Ltd. v. Upper Darby Tp.*, 983 F.2d 1285, 1290 (3d Cir.1993), and we will address it here. *See, e.g., Felmeister v. Office of Attorney Ethics*, 856 F.2d 529, 535 (3d Cir.1988) ("This Court has recognized that considerations of ripeness are sufficiently important that we are required to raise the issue *sua sponte* even though the parties do not."). "[B]ecause issues of ripeness involve, at least in part, the existence of a live 'Case or Controversy,' we ... must determine whether the issues are ripe for decision in the 'Case or Controversy' sense. Further, to the extent that questions of ripeness involve the exercise of judicial restraint from unnecessary decision of constitutional issues, the Court must determine whether to exercise that restraint...." *Blanchette v. Connecticut Gen. Ins. Corps.*, 419 U.S. 102, 138, 95 S.Ct. 335, 355, 42 L.Ed.2d 320 (1974) (footnotes omitted).

### III.

#### A.

■ In *Taylor Inv., Ltd. v. Upper Darby Tp.*, 983 F.2d 1285 (3d Cir.1993), we held a constitutional challenge to a land-use decision is not ripe unless "state authorities [are] given an opportunity to 'arrive[ ] at a final, definitive position regarding how [they] will apply the regulations at issue to the particular land in question.'" *Id.* at 1291 (quoting *Williamson Planning Comm. v. Hamilton Bank*, 473 U.S. 172, 191, 105 S.Ct. 3108, 3118, 87 L.Ed.2d 126 (1985)); *see also Midnight*

*Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 686 (3d Cir.1991) (until City renders final decision on application of building and fire regulations to plaintiff's property, no mature constitutional claim based on enforcement of those regulations exists), *cert. denied*, — U.S. —, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992); *Pace Resources, Inc. v. Shrewsbury Tp.*, 808 F.2d 1023, 1029 (3d Cir.) (mature constitutional claim based on land-use regulation requires that intended use of property was "conclusively barred"), *cert. denied*, 482 U.S. 906, 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987).

*Taylor* involved the revocation of a use permit. There, plaintiffs' lessor secured a use permit to open a "physical fitness/sports center" in Upper Darby Township, Pennsylvania. Instead, the lessor opened an all-night pool hall. *Id.* at 1288. The Township's zoning officer revoked the lessor's permit, claiming the lessor supplied false and misleading information on his permit application. Plaintiffs did not appeal the revocation decision to the Township Zoning Hearing Board.[10] Nor did plaintiffs seek a variance or special exception. Instead, they filed a federal lawsuit, claiming the revocation violated due process and equal protection.

We held that plaintiffs' claims were premature. *Id.* at 1291–92. Based on *Williamson* and *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986), we concluded plaintiffs suffered no mature constitutional injury until township authorities had the opportunity to apply authoritatively their zoning regulations to the property.[11] Refusing to become a zoning board of appeals, *see id.* 983 F.2d at 1291, we declined to encroach on the "delicate area" of zoning without allowing local authorities to construe their own law in the

permit, moot only where building was constructed prior to appeal of injunction).

9. After it filed a notice of appeal from the district court's judgment on the injunction, the County raised ripeness in the district court by way of a motion to stay the injunction pending appeal. The district court concluded plaintiff's claims were ripe and declined to stay the injunction. That judgment, however, is not before us.

10. Under Pennsylvania law, the Zoning Hearing Board has exclusive jurisdiction to render a "fi-

nal adjudication" in disputed decisions by a zoning officer. Pa.Stat.Ann. tit. 53, § 10909.1(a) (Supp.1993).

11. In *MacDonald*, the Supreme Court explained: "Our cases uniformly reflect an insistence on knowing the nature and extent of permitted development before adjudicating the constitutionality of the regulations that purport to limit it." 477 U.S. at 340, 106 S.Ct. at 2561.

context of concrete facts. *Id.* (quoting *Eide v. Sarasota County*, 908 F.2d 716, 726 n. 17 (11th Cir.1990), *cert. denied*, 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991)).

We require finality because "land-use regulation generally affects a broad spectrum of persons and social interests, and ... local political bodies are better able than federal courts to assess the benefits and burdens of such legislation." *Taylor*, 983 F.2d at 1291 (quoting *Rogin v. Bensalem Tp.*, 616 F.2d 680, 698 (3d Cir.1980), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981)). Moreover, "local agencies charged with administering regulations governing property development are singularly flexible institutions; what they take with one hand they may give back with the other." *MacDonald*, 477 U.S. at 350, 106 S.Ct. at 2566. Accordingly, as the Court of Appeals for the Ninth Circuit observed in *Hoehne v. County of San Benito*, 870 F.2d 529, 533 (9th Cir.1989), "[t]he property owner ... has a high burden of proving that a final decision has been reached by the agency before it may seek compensatory or injunctive relief in federal court on federal constitutional grounds."

Here, plaintiff sued New Castle County under § 1983, alleging violations of due process (both substantive and procedural) and equal protection. As the basis of these claims, plaintiff alleges the denial of his building permit effectively deprived him of his right to develop his property commercially. He alleges, and it is not disputed, that the Department of Planning approved three separate plans for his property—each of which showed commercial use on the M–1 portion of the property. Biloon denied a building permit based on the discrepancy between the approved plans and the amended zoning ordinance, which does not allow commercial uses in M–1 districts. Plaintiff alleges Biloon's decision was dictated by Mitchell, who allegedly harbored personal animosity against plaintiff.[12] Thus, plaintiff contends the decision violated substantive due process because it was arbitrary and capricious, violated procedural due process because it was made without notice and a hearing, and violated equal protection because it was not rationally related to a legitimate government objective.

We agree the County has made a final decision with respect to plaintiff's development plans. Plaintiff submitted three plans depicting commercial development on the M–1 portion of the property. The Department of Planning and the County Council accepted those plans, which are final decisions under state law and the County's zoning ordinance. *See Acierno v. Folsom*, 337 A.2d 309, 313 (Del.1975) (planning board has "final decision" to approve development plans). There has been no action by any authoritative body to reverse these actions, and thus we assume without deciding plaintiff has a property interest in his plans under Delaware law.[13]

---

12. Plaintiff contends Mitchell actually rejected the permit application and, by doing so, interjected his opinion into Biloon's area of authority. However, as we have explained, Biloon was required to coordinate with other county agencies, including the Law Department, in considering any permit application. Moreover, the record indicates that—regardless of his motivation for doing so—Biloon sent the June 4, 1992 rejection letter to plaintiff.

13. Under Delaware law, one can acquire a vested right from a land-use decision where "there h[as] been a substantial change in position, expenditures, or incurrence of obligations, made lawfully and in good faith" in reliance on the decision. *Shellburne, Inc. v. Roberts*, 224 A.2d 250, 254 (Del.1966); *see also Amico v. New Castle County*, 101 F.R.D. 472, 483 (D.Del.1984) (explaining vested rights doctrine under Delaware law), *aff'd*, 770 F.2d 1066 (3d Cir.1985). The County does not dispute plaintiff's assertion

he "expend[ed] over one million dollars ($1,000,000) in reliance upon the County's approvals for commercial use...."

The County appears to concede plaintiff once had a right to develop his property commercially but now contends he lost that right. Even though the property is no longer zoned for commercial use, the County maintains § 23–6 of the County's zoning ordinance "could [have] potentially provide[d] a basis for plaintiff's proposed use despite the improper zoning." Section 23–6 "is a three-year savings provision" that, according to the County, allows a land-owner "to establish a use no longer permitted by the change in the zoning regulations." *See* Ordinance § 23–6. The County argues that plaintiff had three years to establish a commercial use on the property after the November 1971 amendment became effective. Because he did not, the County claims he lost the right to develop the property commercially. If this interpretation is correct, it is difficult to understand the County's approval of

Plaintiff's suit, however, seeks redress for the denial of a building permit, not the rejection of a development plan. Although Biloon had initial authority to issue or deny a permit, the decision is appealable to the Board of Adjustment when issuance or denial is based on an interpretation of the zoning regulations. Del.Code Ann. tit. 9, § 1352(a); Ordinance § 23-84. Only the Board has final authority to interpret the zoning regulations—and until it renders a decision there is no final judgment.[14] *Taylor*, 983 F.2d at 1291-92.

We recognize the County has acted inconsistently in approving plaintiff's plans yet rejecting the building permit.[15] In rejecting the permit application, Biloon and Mitchell determined plaintiff's plans violated the amended zoning ordinance—despite the fact the Department of Planning approved the plans. *See* Ordinance § 23-9 (after approval of site plans, "[d]evelopment of the site may proceed pursuant to record plan approval."). However, Biloon does not have authority to void or rescind plaintiff's plans; he has authority only with regard to the permits. Del. Code Ann. tit. 9, § 1361(2)(a)(2); Ordinance § 23-15. The Board of Adjustment is not bound by Biloon's interpretation of the zoning ordinance nor his implicit determination that plaintiff's plans were invalid.[16]

Plaintiff need only secure a final decision from the Board of Adjustment on his application for a building permit before his claims are mature. Because plaintiff has secured a final decision on his development plans, he need not seek a variance, Ordinance § 23-85(3), or rezoning, Ordinance § 23-85.1(1)—which distinguishes this case from *Williamson* and *Taylor*. In *Williamson*, a local plan-

---

14. The County claims that plaintiff was required to appeal to the Board of License Inspection and Review, which is authorized to hear any appeal by "[a]ny person aggrieved by the ... refusal ... of any county license...." *See supra* note 4. We disagree. Although the Board of License Inspection and Review is generally authorized to hear appeals from the issuance or rejection of a permit, the Board of Adjustment is statutorily authorized to render any "final decisions" on zoning matters—and is entitled to hear an appeal based on any action, including denial of a permit, that is based on zoning provisions. Because Biloon's decision was based on an interpretation of the zoning regulations, plaintiff has a right to appeal the decision directly to the Board of Adjustment. Del.Code Ann. tit. 9, § 1352(a); Ordinance § 23-84. Indeed, the district court reached this same conclusion in considering the ripeness issue: "It appears ... that any administrative appeal by plaintiff in connection with this matter would have been filed, if at all, with the Board of Adjustment since plaintiff's application for a building permit was denied solely because of a zoning issue...." *Acierno v. Mitchell*, Civ. No. 92-384-SLR, slip op. at 20 n. 9 (D.Del. July 7, 1993).

15. In large part, the tension here arises from the bifurcated system for approval of development and building plans. The Planning Board is responsible for approving development plans, subject to approval by the Department of Planning and the County Council. However, the Public Works Department is responsible for issuing building permits, subject to review by the Department of License Inspection and Review and/or the Board of Adjustment. Here, the Public Works Department, through Biloon, has chosen to second-guess the approval of plaintiff's plans by the Department of Planning and County Council. Accordingly, this is a closer case than *Taylor* because plaintiff has secured approval of his plans from the governing County agency, only to have Biloon circumvent the implementation of the plans through the permit procedure. However, because state law limits Biloon's authority—by making his determinations specifically "subject to determinations made by the Board of Adjustment," Del.Code Ann. tit. 9, § 1361(1)—the Board should determine whether his action was proper.

16. Nor is the Board of Adjustment bound by Mitchell's decision. The Department of Law is merely the "legal advisor" to "county departments, boards, offices and agencies." Del.Code Ann. tit. 9, § 1441(1). The Law Department performs those duties prescribed by Delaware law or county ordinance. *Id.* § 1441(3). We have not found, and the County has not proffered, any statute or ordinance requiring the Board of Adjustment, or for that matter the Director of Development and Licensing, to defer to the Legal Department's interpretation of the zoning code. In fact, the record indicates that Biloon acted independently in interpreting the zoning code on other occasions. *See* New Castle County Appendix at 258a.

plaintiff's subdivision plan in 1988 and 1989—plans that depicted commercial uses. Moreover, the County's interpretation would have required plaintiff to develop his property before approval of his final development plan. The amendment restricting commercial use was enacted in November 1971, and, according to the County's interpretation of § 23-6, plaintiff was required to develop the property by November 1974. However, the Supreme Court did not direct the County to accept plaintiff's final development plan until 1975.

ning commission rejected a preliminary development plat under its zoning regulations. 473 U.S. at 181–82, 105 S.Ct. at 3113–14. In *Taylor*, the zoning officer revoked the use permit and maintained the intended use was not proper under the Township's zoning ordinance. 983 F.2d at 1288. Because local officials had determined the intended uses were not appropriate under the relevant zoning ordinances in both cases, plaintiffs' claims were not ripe until they sought variances from those ordinances. *See Williamson*, 473 U.S. at 188, 105 S.Ct. at 3117; *Taylor*, 983 F.2d at 1288. Here, the Department of Planning and County Council approved plaintiff's development plans and approved commercial development on the property. The County has done nothing to revoke the approval. Plaintiff will have a "final" decision once the Board of Adjustment renders its decision. If the Board determines commercial development is prohibited under the amendment, plaintiff's application for a building permit will have been conclusively rejected and his § 1983 claims will be ripe.[17]

**B.**

Plaintiff contends *Taylor* is distinguishable because, unlike Pennsylvania's Zoning Hearing Board, the Board of Adjustment does not have statutory authority to render "a final adjudication." *See* Pa.Stat. Ann. tit. 53, § 10909.1(a). We disagree. As we have explained, this dispute concerns the proper interpretation of the County's zoning regulations as applied to plaintiff's property. The Board of Adjustment has plenary review

over "any order, requirement, decision, or determination" under the zoning ordinance by any county officer. Del.Code Ann. tit. 9, § 1352(a)(1); Ordinance § 23–84. The Board also has authority to hear and decide any "applications for interpretation of any zoning ordinance, code, regulation, or map upon which [it] is empowered to pass." Del. Code Ann. tit. 9, § 1352(a)(2).

These administrative powers are markedly different from determinations made by Biloon—which are statutorily "subject to determinations made by the Board of Adjustment." Del.Code Ann. tit. 9, § 1361(1); *see* also Ordinance § 23–19(a) ("No building permit ... shall be granted ... except in compliance with the provisions of this chapter, *or a decision of the board of adjustment or the courts.*"). Therefore, the Board of Adjustment, and not the Director of the Department of Development and Licenses, has final authority to construe the zoning regulations. *See Zoning Board of Adjustment of New Castle County v. Dragon Run Terrace*, 59 Del. 175, 216 A.2d 146, 148 (Board of Adjustment is "guardian" of "public interest in the protection and enforcement of the zoning regulations;" the Board functions in administrative capacity); *Carr v. Town of Dewey Beach*, 730 F.Supp. 591, 608 (D.Del.1990) (under Sussex County's analogously-worded zoning provisions, Board of Adjustment had final policy making authority for county). Because plaintiff has secured no determination from the Board, his § 1983 claims are not yet ripe for judicial review.[18]

---

17. Although plaintiff may appeal for judicial review of the Board of Adjustment's decision, Del. Code Ann. tit. 9, § 1353(a), he need not do so before his § 1983 claims are ripe. A claim is "final" after the Board of Adjustment has rendered a decision. As we noted in *Taylor*, "[f]inality does not require state court review of the board's decision." 983 F.2d at 1293 n. 12.

18. Because plaintiff has secured no final decision from the Board of Adjustment, we will also vacate the district court's decision on Mitchell's qualified immunity defense and remand with instructions to dismiss, without prejudice, plaintiff's § 1983 claim against Mitchell. Before determining whether Mitchell is entitled to qualified immunity, we must determine whether plaintiff has sufficiently alleged a constitutional

violation. *Siegert v. Gilley*, 500 U.S. 226, ——, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Because plaintiff's claims against the County are premature, we cannot address whether he has alleged a constitutional violation against the County. Moreover, plaintiff has alleged no separate violation against Mitchell—his allegations are contained in the same count, and are based on the same facts, as the claim against the County. Thus, the claim against Mitchell individually is not ripe. *See, e.g., Anderson v. Alpine City*, 804 F.Supp. 269, 277 (D.Utah 1992) ("because Plaintiffs have not set forth allegations unique to the individual defendants, and because the constitutional claims ... are unripe, the court cannot conclude that Plaintiffs have alleged separate ripe claims against the individual defendants.").

## IV.

For these reasons, we will vacate the district court's judgment and remand with instructions to dismiss without prejudice.