

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-14-2008

# DeNinno v. Mun Penn Hills

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1550

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation
"DeNinno v. Mun Penn Hills" (2008). *2008 Decisions*. Paper 1444.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1444

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1550
_____

CHUCK V. DENINNO,

Appellant

v.

MUNICIPALITY OF PENN HILLS; HOWARD DAVIDSON, Director of
Planning and Economic Development for Penn Hills, and in
his official capacity, and in his individual capacity;
DOM COSTA, Public Safety Director of Penn Hills, in his
official capacity, and in his individual capacity; DAVID
S. DREW, of the Penn Hills Police Department, in his
official capacity, and in his individual capacity; MARLA
MARCINKO, Manager of the Municipality of Penn Hills, in
her official capacity, and in her individual capacity;
ANTHONY DELUCA, JR., Mayor of Penn Hills, in his official
capacity, and in his individual capacity,


_____

On Appeal from United States District Court
for the Western District of Pennsylvania
(D. C. No. 05-cv-01755)
District Judge: Honorable Arthur J. Schwab
_____

Submitted Under Third Circuit LAR 34.1(a)
March 6, 2008

Before: BARRY, JORDAN and HARDIMAN , *Circuit Judges*.

(Filed: March 14, 2008)

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Chuck DeNinno appeals the District Court's grant of summary judgment on his civil rights complaint. We will affirm.

I.

As we write for the parties, we recount only those facts necessary to our decision. In October 1999, Penn Hills approved DeNinno's site plan for an industrial park and issued a grading permit. The grading permit was revoked some three years later when Appellee Howard Davidson — who was Director of the Penn Hills Planning Department — determined that DeNinno was developing the property in a manner inconsistent with the site plan. DeNinno continued grading the property, however, and was cited for doing so without a permit.

After losing his grading permit, DeNinno submitted several additional site plan applications to the Penn Hills Planning Commission (Commission). Each application was denied for various reasons and Davidson advised DeNinno in writing of the remedial action required to obtain approval. Davidson also repeatedly advised DeNinno that his site plans included land claimed by Joseph and James Dellach, who ran an auto repair business on an adjacent property.

2

In an effort to overturn the Commission's decision, DeNinno sued in Pennsylvania state court. In November 2004, in a separate proceeding, the Pennsylvania Superior Court held that the Dellach brothers owned in fee simple a paved parking lot used for their auto repair business. *See Dellach v. DeNinno,* 862 A.2d 117 (Pa. Super. 2004). In spite of this ruling, one day DeNinno placed two-ton concrete blocks across a portion of the Dellach brothers' parking lot. Police were summoned and Appellee Drew — a Penn Hills police officer — was dispatched to the scene, where DeNinno and the Dellach brothers presented officer Drew conflicting maps. Drew consulted Davidson, who confirmed that, consistent with the Superior Court's decision, DeNinno's concrete blocks were on the Dellachs' property. Drew then asked DeNinno to wait while he recorded the information necessary to issue him a citation for simple trespass, and told him to remove the concrete blocks.

The month following the concrete block incident, the Commission approved one of DeNinno's site plans, subject to ten conditions. Although DeNinno agreed to satisfy all of the conditions, he was unable to do so and soon thereafter began sending profane letters to Davidson and other Penn Hills officials, including Mayor Anthony Deluca, Jr. DeNinno also visited the Penn Hills municipal building, which prompted Penn Hills Public Safety Director — Appellee Dom Costa — to arrange for DeNinno to be accompanied by a police officer during his visits.

In late 2005, the Court of Common Pleas of Allegheny County entered an order requiring DeNinno to submit a site map bearing a surveyor's seal to the Commission and ordering Penn Hills to reinstate his grading permit as long as he produced the map and complied with the ten conditions the Commission had specified. Although DeNinno complied with only two of the ten conditions, he filed a thirty-one count federal complaint. The District Court dismissed eight counts and granted Defendants summary judgment on the remaining twenty-three counts.

II.

DeNinno raises an alliterative congeries of claims under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. The District Court did not err in granting judgment in favor of Defendants on all claims.

A.

DeNinno argues that police accompanied him on his visits to the municipal building in retaliation for exercising his First Amendment rights, namely, seeking a grading permit. The District Court rejected this claim, noting that DeNinno had admitted to at least one outburst in the Penn Hills Municipal Building preceding Appellee Costa's July 2005 decision to implement the aforementioned precautions, and concluding that there was no causal connection between DeNinno's filing of a motion for a grading permit and imposition of these precautions.

4

We agree with the District Court. DeNinno cites nothing in the record to show that Costa even knew that he had filed the motion for reinstatement of his grading permit. This omission is fatal to his claim. *See Ambrose v. Township of Robinson, Pa.,* 303 F.3d 488, 493 (3d Cir. 2002) (retaliation must have been perpetrated by a decisionmaker who was aware of the protected speech). Moreover, DeNinno cites no evidence that these procedures deprived him of access to the municipal building and he admitted that none of the officers who escorted him through the building ever restrained him from conducting business there, prevented him from viewing public documents, or interfered with his ability to attend or speak at public meetings. Thus, these procedures had, at most, a *de minimis* effect on DeNinno's First Amendment rights. *See O'Connor v. City of Newark,* 440 F.3d 125, 128 (3d Cir. 2006).

B.

DeNinno also claims that Davidson's revocation of his grading permit and the subsequent denials of the same without notice or a hearing deprived him of due process guaranteed by the Fourteenth Amendment. Additionally, he maintains that Penn Hills' refusal to issue a grading permit deprived him of the use of his property for three years, in violation of the Takings Clause of the Fifth Amendment. Finally, he contends that his Fourteenth Amendment right to equal protection was violated because Appellees treated him "differently than other similarly situated individuals who applied for a grading

permit." We agree with the District Court that none of these three claims is ripe for adjudication.

Before DeNinno brings a Fourteenth Amendment due process or equal protection claim in federal court, he must "have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Wilson v. MVM, Inc.,* 475 F.3d 166, 176 (3d Cir. 2007) (internal quotation marks and citation omitted). Similarly, a plaintiff aggrieved by the enforcement of a municipal zoning ordinance must exhaust all pertinent state procedures before bringing a Fifth Amendment takings claim. *See County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164-65 (3d Cir. 2006). In *Williamson County Regional Planning Com. v. Hamilton Bank*, 473 U.S. 172, 186, 194-95 (1985), the Supreme Court held that an as-applied takings claim against a municipality's enforcement of a zoning ordinance is not ripe until (1) "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue" (the "finality rule"), and (2) the plaintiff has unsuccessfully exhausted the state's procedures for seeking "just compensation," so long as the procedures provided by the state were adequate. A similar test for finality governs as-applied Fourteenth Amendment claims, whether styled as violations of substantive due process or equal protection. *See Roxbury*, 442 F.3d at 164, 168-69 (requiring exhaustion of available state procedures). These authorities are consistent with the principle that "[i]f there is a process on the books that appears to

6

provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir. 2000) (citation omitted).

Our review of the record convinces us that the District Court was right to reject DeNinno's Fourteenth Amendment procedural due process claim as premature. The Pennsylvania courts have a remedy for the revocation of his grading permit and any future denials. DeNinno does not contend otherwise, nor could he, for he invoked that procedure when he sought and obtained a court order to secure a grading permit, as the District Court noted. He complains, nevertheless, that Davidson has refused to issue him a grading permit pursuant to the most recent state court order. As Appellees point out, however, DeNinno's remedy for this alleged violation, if it occurred, lies in a civil contempt proceeding. Although DeNinno claims that he "attempted" without success to obtain a grading permit through state processes, he does not dispute that civil contempt remains an available remedy.

We also agree with the District Court's conclusion that DeNinno's Fourteenth Amendment equal protection claim is unripe because "the Planning Commission has not yet issued a final decision." This was consistent with *Williamson*, see 473 U.S. at 194-95, and with authorities in our Circuit. *See, e.g.*, *Acierno v. Mitchell*, 6 F.3d 970, 976-77 (3d Cir. 1993) (claim unripe when state had not reached final decision on application for building permit). DeNinno insists that this conclusion is incorrect because "Davidson is

7

the individual who had the final determination as to whether to issue . . . a grading permit," but he cites no authority for the proposition that Davidson "is" the Commission. In fact, Davidson is merely one of five members of the Commission. *See* Penn Hills Mun. Ord. 1230.03. Moreover, DeNinno proffers nothing to refute the court's conclusion that the status of his permit has not yet finally been decided by the Planning Commission. Even if the Commission had made a final decision, the relevant ordinance provides that the Planning Commission does no more than *make recommendations* to Penn Hills' Council and Mayor, who then decide whether to grant grading permits. *See* Penn Hills Mun. Ord. 1230.02(a), (c)(2).

DeNinno's Fifth Amendment takings claim fails for reasons akin to those that doom his Fourteenth Amendment claim. As the District Court noted, Pennsylvania's Eminent Domain Code provides inverse condemnation procedures through which a landowner may seek just compensation for the taking of property. We have reached that same conclusion and found takings claims to be unripe until plaintiffs pursued their rights under these statutes in Pennsylvania courts. *See Cowell v. Palmer Twp.*, 263 F.3d 286, 290-91 (3d Cir. 2001). DeNinno does not argue that Pennsylvania's inverse condemnation procedures are somehow foreclosed to him.

C.

DeNinno next argues that officer Drew seized him in violation of the Fourth Amendment for the period of time it took to obtain the information to cite DeNinno for

8

trespass on the Dellach brothers' property. DeNinno contends that he was unconstitutionally seized when Drew ordered him to accompany him to his vehicle so that Drew could record his name and address because a reasonable person would believe he was not free to leave.

Under *Terry v. Ohio*, 392 U.S. 1 (1968) and its progeny, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Valentine*, 232 F.3d 350, 353 (3d Cir. 2000) (citation and quotation marks omitted). "Reasonable, articulable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, and only a minimal level of objective justification is necessary for a *Terry* stop." *United States v. Delfin-Colina,* 464 F.3d 392, 396 (3d Cir. 2006) (citations and internal quotation marks omitted).

In light of the applicable standard, DeNinno's Fourth Amendment claim is borderline frivolous. When officer Drew arrived at the scene, DeNinno admitted he had caused the two-ton blocks to be placed on an area of the property that was plainly in dispute. After learning from Davidson that the Superior Court had ruled the property in question belonged to the Dellach brothers, Drew quite reasonably concluded that he had probable cause to believe that DeNinno had committed trespass. Accordingly, there was no Fourth Amendment violation.

9

D.

Finally, DeNinno urges us to reverse the District Court's dismissal of his claim for municipal liability. Municipal liability under § 1983 attaches only when the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs. Of the City of New York*, 436 U.S. 658, 694 (1978). Under *Monell*, a plaintiff must identify the alleged unlawful policy or custom in question. *See A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center,* 372 F.3d 572, 580 (3d Cir. 2004) (citation omitted). DeNinno has failed to do so. Even more fundamentally, there can be no municipal liability here because we have determined that none of the individual defendants violated the Constitution. *See, e.g., Grazier ex rel. White v. City of Phila.*, 328 F.3d 120, 124 n.5 (3d Cir. 2003); *see also Searles v. Se. Penn. Transp. Auth.*, 990 F.2d 789, 794 (3d Cir. 1993).

For all of the foregoing reasons, we will affirm the District Court's judgment.